UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────

DAVID W. PIERCE,

                Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

───────────────────────────────────

**REPORT AND
RECOMMENDATION**

09-CV-813
(GTS/VEB)

## I. INTRODUCTION

In February of 2006, Plaintiff David W. Pierce applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since August 30, 2002, due to physical impairments. The Commissioner of Social Security granted Plaintiff's applications in part and denied them in part.

Plaintiff, by and through his attorneys, Olinsky & Shurtliff, Jaya Shurtliff, Esq., commenced this action on July 17, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the unfavorable portion of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On May 10, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for SSI benefits and DIB on February 1, 2006, alleging disability beginning on August 30, 2002. (T at 35-36, 44-46).[1]  The applications were denied initially on April 25, 2006. (T at 43). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York on April 17, 2008, before ALJ Joseph Medicis.  (T at 275). Plaintiff, accompanied by an attorney, Bill Lamitie, appeared and testified.  (T at 275-306). On July 23, 2008, ALJ Medicis issued a decision granting in part and denying in part Plaintiff's applications. (T at 20-33).  The ALJ's decision became the Commissioner's final decision on June 18, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 2-4).

Plaintiff timely commenced this action on July 17, 2009. (Docket No. 1).  The Commissioner interposed an Answer on January 8, 2010. (Docket No. 7).  Plaintiff filed a Brief in support of the action on February 24, 2010. (Docket No. 10).  The Commissioner filed a Brief in opposition on April 9, 2010. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 5).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

motion be denied, Plaintiff's motion be granted, and that this case be remanded for further administrative proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

### 1.    Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act as of August 30, 2002, the date of alleged onset. (T at 24).  The ALJ also found that Plaintiff did not engage in substantial gainful activity between August 30, 2002, and April 1, 2007, but had engaged in substantial gainful activity after that date.(T at 24). The ALJ concluded that, at the times relevant to his decision, Plaintiff had the "following impairments considered 'severe' under the Act: residual status post fracture of the right tibia and combined ankle [fracture] and drug and alcohol dependence" (considered to be in full sustained remission as of April 5, 2006). (T at 25).    For the period between August 30, 2002, and August 16, 2005, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 27-

5

28).

However, the ALJ concluded that from August 30, 2002, through August 16, 2005, Plaintiff lacked all ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. (T at 28).   The ALJ found that Plaintiff was not able to perform his past relevant work during that period. (T at 28).  Considering Plaintiff's age (48 as of the alleged onset date), education (high school), work experience (unskilled, non-transferable), and residual functional capacity ("RFC"), the ALJ found that there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed during this time period. (T at 29).  As such, the ALJ concluded that Plaintiff was disabled with respect to the period between August 30, 2002, and August 16, 2005. (T at 29).

The ALJ determined that Plaintiff's substance abuse was not a contributing factor material to the determination of disability. (T at 29).   The ALJ found that medical improvement occurred as of August 17, 2005, after which point Plaintiff had the RFC to perform "light work" as defined in 20 CFR §§ 404.1567 (b) and 416.967 (b).   The ALJ concluded that Plaintiff continued to be unable to perform his past relevant work, but considering his age (50 as of June 2004), education, work experience, and RFC, he was able to perform a significant number of jobs in the national economy. (T at 32).  Thus, the ALJ found that Plaintiff's disability ended on August 17, 2005, and he was therefore not entitled to benefits after that date. (T at 33).  As noted above, the ALJ's decision became the Commissioner's final decision on June 18, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 2-4).

6

**2.      Plaintiff's Claims**

Plaintiff challenges the unfavorable portion of the Commissioner's decision.   He offers four (4) principal arguments in support of this position.   First, Plaintiff challenges the ALJ's credibility determination.   Second, Plaintiff argues that the ALJ failed to adequately develop the administrative record because he did not order a consultative psychiatric examination.   Third, Plaintiff contends that the ALJ's light work RFC assessment is not supported by substantial evidence.   Fourth, Plaintiff argues the ALJ's reliance on the Grids was misplaced.   This Court will address each argument in turn.

**a.      Credibility**

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to

enable us to decide whether the determination is supported by substantial evidence." <u>Lewis v. Apfel</u>, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.  [Plaintiff's] daily activities;
2.  The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No.

8

7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

The question at issue in this case is whether Plaintiff was disabled after August 17, 2005. At the hearing, Plaintiff testified that although he was employed sporadically between 2005 and 2007, he was "doing too much on [his] leg" and lost a maintenance job due to problems with his right leg. (T at 292-93, 302-304). He stated that he can stand for only an hour or two on a hard surface before needing to sit down. (T at 301). Plaintiff's leg causes him pain when he walks and he sometimes uses a cane. (T at 301). He experiences weakness and numbness in his leg and occasionally it feels like it is "going to give out" on him. (T at 301-302).

The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence, and limited effects of the symptoms were not entirely credible after August 17, 2005. (T at 32).

For the following reasons, this Court finds that the ALJ did not adequately develop the record when assessing Plaintiff's credibility.

In late August of 2002, Plaintiff badly injured his right leg in a high speed motor vehicle accident. (T at 25). Dr. Patrick R. Scerpella was the treating orthopedic surgeon and continued to treat Plaintiff's leg in the following years. As discussed above, the ALJ determined that, as result of his leg injury, Plaintiff was under a "disability," as that term is defined under the Act from August 30, 2002 through August 16, 2005. (T at 29). No challenge is made to that finding.

On August 16, 2005, Dr. Scerpella opined that Plaintiff had "finally" experienced

9

"radiographic union" and was thus ready to "work full time."  (T at 206).   The doctor indicated that Plaintiff should not lift or carry more than 35 pounds and should not work in high places. (T at 206).

The ALJ found Dr. Scerpella's assessment "wholly reliable" and afforded it "controlling weight." (T at 31).  It is the key piece of evidence supporting the ALJ's finding that Plaintiff was not disabled after August 17, 2005.  However, in granting controlling weight to this assessment, the ALJ failed to adequately account for the lapse in time between Dr. Scerpella's determination and the date of the ALJ's decision.

 A consultative medical examination was conducted in March of 2006 by Dr. Myra Shayevitz.  In her report, Dr. Shayevitz indicated that Plaintiff cooks everyday, cleans once a week, does laundry twice a week, does his own shopping, attends to his personal care, and builds model cars. (T at 238).  She opined that Plaintiff was comfortable sitting, but would have limitations with regard to "prolonged" standing, walking, or stair climbing. (T at 240).  Dr. Shayevitz diagnosed Plaintiff as suffering from "[s]tatus-post fracture of the right leg with residual pain" and assessed his prognosis as "guarded but stable." (T at 240).

An orthopedic consultative examination was conducted in May of 2008 by Dr. Brij Sinha, who opined that Plaintiff has mild to moderate limitation with regard to prolonged walking and weightbearing. (T at 265).   Dr. Sinha also completed a Medical Source Statement of Ability to Do Work-Related Activities, in which he opined that Plaintiff could occasionally lift/carry 10 pounds, but never more than that. (T at 267).  He found that Plaintiff could sit for 4 hours in an 8-hour work day, and could never climb stairs/ramps, climb ladders/scaffolds, balance, stoop, kneel, crouch, or crawl. (T at 268, 270).

The ALJ gave "[n]o evidentiary weight" to Dr. Sinha's assessment on the grounds

10

that he was a non-treating source and because the ALJ concluded that Dr. Sinha's findings did not support the limitations stated. (T at 32).  However, irrespective of how much weight the ALJ decided to give to Dr. Sinha's determination, this Court finds that the ALJ was nevertheless obliged to re-contact Dr. Scerpella.  Given Dr. Sinha's findings, Plaintiff's testimony concerning his own limitations and failed efforts to maintain employment, and the lapse in time between the treating surgeon's assessment and the date of the ALJ's decision, the ALJ should have re-contacted Dr. Scerpella to determine whether Plaintiff's condition either did not heal as anticipated or whether there had been some deterioration in the condition resulting in greater limitations.

It is well-settled in this Circuit that in light of the "'essentially non-adversarial nature of a benefits proceeding,' " an ALJ has an affirmative duty to develop the record. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000); Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir.2004) ("'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'")  "This duty exists even when the claimant is represented." Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996).

Specifically, this duty requires the Commissioner to "seek additional evidence or clarification" from the claimant's treating sources when their reports "contain[ ] a conflict or ambiguity that must be resolved" or their reports are "inadequate for [the Commissioner] to determine whether [claimant] is disabled." 20 C.F.R. §§ 404.1512(e), (e)(1). The Commissioner "may do this by requesting copies of [the claimant's] medical source's records, a *new report*, or a more detailed report from [the claimant's] medical source." Id.

11

§ 404.1512(e)(1)(emphasis added).

In this case, the treating surgeon's assessment was made in August of 2005, nearly three (3) years before the ALJ's decision.  In the meantime, two consultative examiners assessed that Plaintiff continued to be limited by his impairment to a potentially greater degree than initially anticipated by the treating surgeon.   One of the consultative examiners, Dr. Sinha, assessed significantly greater limitations.   Contrary to the ALJ's assessment, Dr. Sinha's findings suggested that Plaintiff was not capable of performing even sedentary work, let alone light work as assessed by the ALJ.[4]

As such, even if the ALJ felt that Dr. Sinha's assessment was not entitled to any evidentiary weight, at the very least, it provided a reason for re-contacting Dr. Scerpella to determine whether Plaintiff's condition had worsened or had otherwise not progressed as Dr. Scerpella had envisioned in August of 2005.  The other consultative examiner, Dr. Shayevitz, found that Plaintiff had "residual pain" from his injury and assessed his prognosis as stable, but "guarded." (T at 240).  Again, this should have alerted the ALJ to the possibility that, if re-contacted, the treating surgeon might change (or at least modify) the assessment rendered nearly three (3) years earlier in light of subsequent events.  At the very least, the consultative examiners' findings raised the issue of whether Plaintiff's condition had worsened since Dr. Scerpella's 2005 assessment.

In other words, given the circumstances, and in particular the multiple indications

---

[4]Sedentary work "is defined as involving only occasional standing and walking, the lifting of no more than ten pounds at a time, and the occasional lifting and carrying of light objects." Schaal v. Apfel, 134 F.3d 496, 501 n. 6 (2d Cir. 1998); see also 20 C.F.R. § 404.1567. "Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996) ("Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday").

that Plaintiff's condition may have worsened since August 2005, Dr. Scerpella's assessment did not provide an adequate basis for the ALJ's disability determination. There is no indication that Dr. Scerpella intended his August 2005 report to be the "final word" on the extent of Plaintiff's limitations.  Indeed, although he declined to schedule any specific follow-up appointment, Dr. Scerpellla did indicate that he would see Plaintiff "[i]f he has any new or recurring problems." (T at 206).  The Regulations provide that the Commissioner will obtain a "new report" when the existing information from the treating provider is inadequate to make a disability determination. 20 C.F.R. § 416.912.  Given the significant time lapse and findings of the consultative examiners, a new, updated report should have been obtained from Dr. Scerpella in this case.

Moreover, the ALJ's decision to discount Plaintiff's subjective complaints appears to be based on the fact that the complaints were contradicted by Dr. Scerpella's assessment and by Plaintiff's activities of daily living.  With regard to the former, as noted above, there was sound evidence to believe that Dr. Scerpella's August 2005 findings may have become stale and, as such, the ALJ erred by failing to re-contact him.  With regard to the latter, it is well-settled that ordinary activities of daily living "do not by themselves contradict allegations of disability", as "people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Lastly, this Court notes that the ALJ recognized the underdevelopment of the record, yet appeared to take no meaningful steps to remedy it.  To wit, the very first

13

comment made by the ALJ at the hearing was his indication to Plaintiff's counsel that the case was "woefully underdeveloped." (T at 277).   Plaintiff's counsel then indicated that Plaintiff was trying to schedule an appointment with Dr. Scerpella, but there was an issue with payment because Plaintiff did not have health insurance. (T at 280).   The ALJ, recognizing the underdevelopment of the record, encouraged Plaintiff to find a way to be seen by Dr. Scerpella. (T at 281).   The ALJ also explained that, in light of the underdevelopment of the record and Plaintiff's apparent difficulty being seen by Dr. Scerpella, he was ordering a consultative orthopedic examination. (T at 281).  The ALJ cautioned Plaintiff that "whatever the consultant says I have to consider it." (T at 281).  He explained that he could not "ignore it because [it might turn out to be] not real favorable." (T at 281).  Of course, a consultative examination was thereafter performed by Dr. Sinha and it was favorable to the Plaintiff.  However, the ALJ decided to ignore the consultant because his assessment was contradicted by Dr. Scerpella's August 2005 assessment, *i.e.* because it was contradicted by the record that the ALJ himself characterized as "woefully underdeveloped." This circular reasoning resulted in a flawed credibility analysis.

Accordingly, this Court has little difficulty concluding that the ALJ's credibility determination was fatally undermined by his failure to re-contact Dr. Scerpella.   It is therefore recommended that the matter be remanded to the Commissioner, with instructions that Dr. Scerpella be re-contacted and requested to provide a new report assessing Plaintiff's limitations in light of subsequent developments.

### b.      Failure to Order a Consultative Psychological Examination

Dr. Shayevitz, one of the consultative examiners, noted that Plaintiff "had some difficulty following simple directions during the evaluation" and suggested that "if possible a psychology evaluation may be indicated." (T at 240).  Sharon Kaufman, a vocational rehabilitation counselor, noted that Plaintiff had "very few general or personal skills . . . transferable to a new job situation" and, as such, would require "monitoring, skills training, behavior management, support, assistive technology or accommodations and adaptions not typically made for other employees to maintain work skills and stable job performance." (T at 139).

Plaintiff contends that, in light of this evidence, the ALJ was obligated to develop the record by ordering a consultative psychological examination to determine the nature, extent, and severity of any mental impairments.  This Court finds that it cannot agree with this contention.  Plaintiff did not have any history of psychological treatment or symptoms.  Other than mentioning the fact that he felt under "stress," he did not allege disability based upon a mental impairment in his benefits applications. (T at 54, 92).  A "report of contact" prepared by "R. Eurich," a State Agency employee, indicated that Plaintiff confirmed that he attends to his own finances, reads newspapers, and "has no difficulties with concentration or attention."  (T at 255).  He had never received psychiatric treatment and specifically denied that his mental status imposed any work-related limitations. (T at 255).  Dr. Noble, a State Agency review consultant, reviewed Plaintiff's medical history and concluded that he had no medically determinable mental impairment. (T at 248).

In light of the foregoing, this Court finds no error in the fact that the ALJ did not order a consultative psychiatric evaluation.  See Cruz v. Shalala, No. 94 Civ. 0929, 1995

15

WL 441967 at *5 (S.D.N.Y. July 26, 1995); Beal v. Chater, No. 94-CV-946S, 1995 WL 819041, at *4 (W.D.N.Y.) (W.D.N.Y. Feb. 15, 1996).  Of course, should the District Court accept this Court's recommendation and remand for further development of the record concerning Plaintiff's physical limitations, this finding is not meant to preclude the Commissioner from ordering such a consultative psychiatric examination in the exercise of discretion.

<strong>c.      RFC</strong>

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ found that Plaintiff had the RFC to perform light work as of August 17, 2005.  Specifically, the ALJ determined that Plaintiff could lift and/or carry 35 pounds, 10 pounds frequently, stand/walk for about 6 hours and sit for about 6 hours in an 8-hour work day, had an unlimited ability to push/pull, could occasionally climb/balance

16

and frequently stoop, kneel, crouch, and crawl. (T at 30).

Because the ALJ's RFC determination was so heavily based upon Dr. Scerpella's August 2005 assessment, it is flawed for the reasons stated above, namely, because the record contains sufficient evidence to question whether that assessment was rendered stale by subsequent events.  As such, the ALJ's failure to re-contact Dr. Scerpella renders his RFC determination fatally flawed.  This too should be reexamined on remand after further development of the record.

Lastly, it should be noted that the ALJ indicated that Plaintiff had testified that he "could lift and carry 35 pounds." (T at 32).  The actual testimony is rather more equivocal than that.  When asked how much he could lift and carry, Plaintiff said "35 pounds is what they put me on for limitations for lifting." (T at 300).  Contrary to the ALJ's statement, this apparent reference to Dr. Scerpella's August 2005 assessment does not constitute an admission that Plaintiff can actually lift that weight, contains no information concerning how frequently he might be able to lift that much, and does not make any representation concerning his ability to carry.

### d.    Use of the Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines

17

set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the

"Grid").  See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v.

Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation
> process described above, the Commissioner, under appropriate circumstances,
> may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404,
> Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account
> the claimant's residual functional capacity in conjunction with the claimant's age,
> education and work experience. Based on these factors, the Grid indicates whether
> the claimant can engage in any other substantial gainful work which exists in the
> national economy. Generally the result listed in the Grid is dispositive on the issue
> of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements

of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and

very heavy, based on the extent of requirements in the primary strength activities of sitting,

standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. §

404.1567(a). Upon consideration of the claimant's residual functional capacity, age,

education, and prior work experience, the Grid yields a decision of "disabled" or "not

disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

In this case, the ALJ used the Grids as a framework for making his disability

determination.  (T at 32-33).   However, the ALJ's consultation of the Grids was based

upon his RFC assessment with regard to Plaintiff's physical limitations, namely that he was

capable of performing light work.  (T at 32).  This determination was necessarily impacted

by the ALJ's errors as discussed above.  As such, the step 5 analysis should be revisited

on remand following reconsideration of that portion of the ALJ's decision.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" <u>Butts v. Barnhart</u>, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, the Commissioner's motion be denied, that the decision of the Commissioner be reversed in part, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

19

Dated:   July 26, 2010

       Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY

Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 26, 2010

Victor E. Bianchini
United States Magistrate Judge